USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 09/06/2023

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| v. | 99-CR-605 (VEC) |
| JEAN DAVILMAR, | OPINION AND ORDER |
| Defendant-Petitioner. | |

VALERIE CAPRONI, United States District Judge:

In 2010, Jean Davilmar ("Petitioner" or "Davilmar"), a citizen of Haiti and a lawful permanent resident of the United States, was convicted in this Court of conspiracy to commit bank fraud. *See* Judgment, Dkt. 49. In 2017, Petitioner was convicted after trial in state court of several crimes, including grand larceny and a scheme to defraud. *See* Certificate of Disposition, Dkt. 71-4. As a result of his criminal conduct, he is subject to multiple orders of deportation. *See* BIA Decision, Dkt. 73-2.

On January 26, 2023, Petitioner filed, *pro se*, a petition for a writ of error *coram nobis* to vacate his federal conviction. *See* Pet., Dkt. 55. Petitioner alleges that he received ineffective assistance of counsel in violation of the Sixth Amendment because his attorney provided erroneous advice with respect to the immigration consequences of his guilty plea. The Government opposes Davilmar's petition. *See* Gov't Mem., Dkt. 71.[1] For the following reasons, Davilmar's petition is DENIED.

## BACKGROUND

Following his indictment for conspiracy to commit bank fraud in violation of 18 U.S.C. § 371 and bank fraud in violation of 18 U.S.C. § 1344, on April 14, 2000, Davilmar pled guilty to

---

[1] On July 21, 2023, the Court extended Petitioner's reply deadline from June 16, 2023, to August 25, 2023. *See* Order, Dkt. 74. To date, Petitioner has not replied in support of his motion.

conspiracy to commit bank fraud pursuant to a cooperation agreement (the "Cooperation Agreement").[2]  *See* Change-of-Plea Tr., Dkt. 71-1, at 8:16-22; Cooperation Agreement, Dkt. 71-3; Gov't Mem. at 3.

According to Petitioner, before he pled guilty, his attorney advised him that he would serve no prison time and suffer no adverse immigration consequences if he pled guilty pursuant to the Cooperation Agreement.  *See* Pet. ¶ 4.[3]  Davilmar purportedly understood that his attorney had communicated Davilmar's immigration concerns to the prosecutor, who had agreed to speak with the U.S. Department of Homeland Security ("DHS").[4]  *Id.*  Petitioner maintains that he would not have pled guilty had he known that conspiracy to commit bank fraud is an offense that would lead to deportation because he did not believe that the Government had sufficient evidence to succeed at trial.  *Id.* ¶ 12.  Petitioner nevertheless states that the "only reason" he pled guilty was because counsel "promised" that he would not be incarcerated and because he believed it would avoid "public exposure" from his arrest.  *Id.*

Petitioner's primary counsel at the time of his guilty plea, James Branden ("Branden"), recalls Petitioner generally but has almost no memory of communications with him during that time.  *See* Branden Decl., Dkt. 64, ¶ 3.  As a general matter, however, Branden asserts that he has

---

[2]  The Cooperation Agreement was signed by Davilmar and his attorney James Branden ("Branden").  *See* Cooperation Agreement, Dkt. 71-3, at 6.

[3]  Petitioner asserts that he was represented by Gary Becker ("Becker") at the time.  *See* Pet., Dkt. 55, ¶ 4 n.1.  Both Becker and Branden indicated, however, that Becker was not involved in Petitioner's representation until 2010.  *See* Becker Aff., Dkt. 65, ¶ 2; Branden Decl., Dkt. 64, ¶ 7(c).  Petitioner waived attorney-client privilege with respect to his former attorneys in this case.  *See* Order, Dkt. 61; Waiver, Dkt. 62.

[4]  Davilmar never met with representatives from DHS regarding his immigration status but "presumed" that counsel had contacted the department on his behalf.  Pet. ¶ 8.

The Court notes that DHS did not exist in 2000.  Presumably, Petitioner is referring to the Immigration and Naturalization Service ("INS").  At the time, INS would have been the agency that would have had responsibility for deporting Petitioner.  In 2002, INS was combined with various other agencies into DHS.  *See* U.S. Dep't of Homeland Sec., *History*, https://www.dhs.gov/history (last visited Aug. 8, 2023).

never promised any client that the client would serve no prison time if he pled guilty and that he does not recall Government counsel agreeing to contact the immigration authorities on Davilmar's behalf. *Id.* ¶ 7. Branden also maintains that it is generally his practice to investigate the immigration consequences of a non-citizen client's criminal conviction and to discuss those consequences with the client. *Id.* ¶ 8.

At a change-of-plea hearing before Magistrate Judge James C. Francis IV, Davilmar confirmed that he had read and understood the Cooperation Agreement. *See* Change-of-Plea Tr. at 8:16-22. The Cooperation Agreement provided, in relevant part:

> It is understood that this Agreement does not bind any federal, state, or local prosecuting authority other than this Office . . . . Nor does this Agreement bind the Immigration and Naturalization Service (INS), although this Office will bring the cooperation of the Defendant to the attention of INS, if requested by him.
>
> . . . .
>
> This Agreement supersedes any prior understandings, promises, or conditions between this Office and the Defendant. No additional understandings, promises, or conditions have been entered into other than those set forth in this Agreement, and none will be entered into unless in writing and signed by all parties.

Cooperation Agreement at 2, 4–5.

After asking Davilmar about the details of his criminal conduct, Judge Francis concluded that he would recommend to the presiding judge that Petitioner's plea be accepted because it was voluntary, knowing, and grounded in the factual record. *See* Change-of-Plea Tr. at 11:14-19. The immigration consequences of Davilmar's plea were not raised during his change-of-plea hearing. Petitioner asserts that he "presumed" that counsel had negotiated an "arrangement" with the immigration authorities. *See* Pet. ¶ 6.

After an extensive period of cooperation, on May 27, 2010, Judge William H. Pauley III sentenced Davilmar to a three-year term of probation — a sentence well below the applicable

3

U.S. Sentencing Guidelines (the "Guidelines") range — in light of Davilmar's cooperation. *See* Sentencing Tr., Dkt. 71-2, at 12:5-15; *see also* Cooperation Agreement; Pet. ¶ 3.

On June 3, 2012, Davilmar was served with a notice to appear before an immigration judge ("IJ"). He was charged with being an inadmissible alien under Section 212(a)(2)(A)(i)(I) of the Immigration and Nationality Act (the "INA"), which bars admission to the United States of any alien convicted of "a crime involving moral turpitude" or an attempt or conspiracy to commit such a crime. *See* IJ Decision, Dkt. 73-1, at 1. On August 25, 2016, Davilmar was ordered removed to Haiti. *Id.* at 2.

On December 7, 2017, following a trial in New York state court, Davilmar was convicted of two counts of grand larceny in violation of New York Penal Law ("NYPL") § 155.35; four counts of offering a false instrument for filing in violation of NYPL § 175.35; five counts of criminal possession of a forged instrument in violation of NYPL § 170.25; and one count of a scheme to defraud in violation of NYPL § 190.65. *See generally* Certificate of Disposition; Gov't Mem. at 4–5.[5]

Following his state court conviction, Davilmar's removal proceedings were reopened, and, on November 8, 2022, an IJ again ordered Davilmar's removal. *See* IJ Decision at 2, 17–18. The IJ found that Davilmar's state convictions for grand larceny in violation of NYPL § 155.35 and for a scheme to defraud in violation of NYPL § 190.65 are crimes "involving moral turpitude" that render Davilmar inadmissible under the INA. *Id.* at 7–8. The IJ also concluded that Davilmar is ineligible for cancellation of removal, asylum, and withholding of removal under the INA because his state conviction for grand larceny is an "aggravated felony" under the

---

[5] Davilmar was also convicted of insurance fraud in violation of NYPL § 176.20; that conviction was reversed on appeal. *See* Gov't Letter, Dkt. 73, at 1 n.1.

statute.  *Id.* at 12–13.  On April 26, 2023, the Board of Immigration Appeals (the "BIA") affirmed the IJ's removal decision.  *See generally* BIA Decision.

Davilmar is currently serving his state sentence at the Fishkill Correctional Facility; his earliest release date is in December 2024.  *See* DOCCS, *Inmate Locator*, https://nysdoccslookup.doccs.ny.gov (last visited August 8, 2023).

## DISCUSSION

### I.     Legal Standard

A petition for a writ of error *coram nobis* is "a remedy of last resort for petitioners who are no longer in custody pursuant to a criminal conviction and therefore cannot pursue direct review or collateral relief by means of a writ of habeas corpus."  *Fleming v. United States*, 146 F.3d 88, 89–90 (2d Cir. 1998).  The writ should issue only where "extraordinary circumstances are present."  *Foont v. United States*, 93 F.3d 76, 78 (2d Cir. 1996) (cleaned up); *see also United States v. Rutigliano*, 887 F.3d 98, 108 (2d Cir. 2018) ("The writ of error *coram nobis* is an extraordinary remedy that issues only in extreme cases. . . ." (cleaned up)).

To be entitled to relief, the petitioner "must demonstrate that (1) there are circumstances compelling such action to achieve justice, (2) sound reasons exist for failure to seek appropriate earlier relief, and (3) the petitioner continues to suffer legal consequences from his conviction that may be remedied by granting of the writ."  *Foont*, 93 F.3d at 78–79 (cleaned up).  The burden lies with the petitioner, and it is "a heavy one because a court reviewing a petition for *coram nobis* relief 'must presume that the proceedings were correct . . . .'"  *Rutigliano*, 887 F.3d at 108 (citation omitted).  At the same time, "the submissions of a *pro se* litigant must be construed liberally and interpreted 'to raise the strongest arguments that they suggest.'"  *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam) (quoting *Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006)).

Ineffective assistance of counsel in violation of the Sixth Amendment is one circumstance that can compel granting the writ to achieve justice. *Doe v. United States*, 915 F.3d 905, 910 (2d Cir. 2019); *see also Rodriguez v. United States*, 730 F. App'x 39, 42 (2d Cir. 2018); *Kovacs v. United States*, 744 F.3d 44, 49 (2d Cir. 2014); *Chhabra v. United States*, 720 F.3d 395, 406 (2d Cir. 2013). To prove ineffective assistance of counsel, the petitioner must show: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that the petitioner was prejudiced as a result. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). The attorney's errors must be "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.*

Counsel's "affirmative misrepresentation" regarding the immigration consequences of a guilty plea is objectively unreasonable. *United States v. Couto*, 311 F.3d 179, 187–88 (2d Cir. 2002), *abrogated on other grounds by Padilla v. Kentucky*, 559 U.S. 356 (2010). Following *Padilla* in 2010, counsel's failure affirmatively to address the immigration consequences of a guilty plea may violate the defendant's Sixth Amendment rights if the adverse immigration consequences of pleading guilty are sufficiently clear. *See Padilla*, 559 U.S. at 368–69.[6]

A petitioner has suffered prejudice within the meaning of that term under *Strickland* if he can show that "there is a reasonable probability that, but-for counsel's unprofessional errors, the result of the proceeding would have been different." *Kovacs*, 744 F.3d at 51 (quoting *Strickland*, 466 U.S. at 694). In the plea-bargain context, the "petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances," *Padilla*,

---

[6]   Because *Padilla* does not have retroactive effect, *see Chaidez v. United States*, 568 U.S. 342, 344 (2013), and Petitioner pled guilty a decade before it was decided, *Padilla* has no bearing on this case. *Couto*, by contrast, applies retroactively because courts have long held that providing "affirmative misadvice" regarding the immigration consequences of a conviction is objectively unreasonable. *Kovacs v. United States*, 744 F.3d 44, 50–51 (2d Cir. 2014).

559 U.S. at 372, or that there is a reasonable probability that he could have negotiated a plea that would not have an adverse impact on his immigration status, or "that he would have litigated an available defense," *Kovacs*, 744 F.3d at 52.

## II. Application

Davilmar's petition fails because the circumstances do not compel issuance of the writ to achieve justice. Even if Petitioner's federal conviction were vulnerable to an effective assistance of counsel claim, he would still be subject to removal due to his state court convictions.

### A. *Coram Nobis* Relief is Unavailable Because of Petitioner's State Convictions

Even assuming Petitioner could establish ineffective assistance of counsel, his petition would be denied because his state convictions independently justify removal under the INA. In 2017, Petitioner was found guilty of a slew of state crimes, including grand larceny and a scheme to defraud; certain of those offenses are crimes "involving moral turpitude" that render Davilmar inadmissible under the INA. *See* IJ Decision at 7–8, 12–13. Vacating Petitioner's federal conviction would, therefore, not prevent Petitioner's deportation, rendering *coram nobis* relief "inappropriate." *Korac v. United States*, No. 93-CR-848 (CS), 2011 WL 2365811, at *4 (S.D.N.Y. June 6, 2011) (denying *coram nobis* relief because a "separate conviction form[ed] an independent basis for deportation"); *see also Foreman v. United States*, 247 F. App'x 246, 248 (2d Cir. 2007) (affirming the denial of *coram nobis* relief in part because issuing the writ would not prevent the petitioner's deportation; the petitioner had been convicted of a separate aggravated felony).

7

### B. Petitioner Has Not Established that He Received Ineffective Assistance of Counsel

Putting aside the fact that Petitioner is subject to deportation independent of his federal conviction, Davilmar has not established that counsel provided erroneous immigration advice leading up to his guilty plea or that he was prejudiced by counsel's advice.

Davilmar alleges that counsel incorrectly assured him that pleading guilty would not result in adverse immigration consequences. *See* Pet. ¶ 4. Because Davilmar is not a U.S. citizen, and because he pled guilty to a crime that undeniably qualifies as a "crime of moral turpitude" under the INA, *see* IJ Decision at 6–7, such advice would have been erroneous and, therefore, objectively unreasonable under *Strickland*, *see Couto*, 311 F.3d at 187. His counsel at the time of the plea does not recall his advice on this score and states only that it was his normal practice to investigate immigration consequences and to discuss those consequences with the client. *See* Branden Decl. ¶¶ 3, 7–8. Although Davilmar swears that his attorney assured him there would be no adverse immigration consequences, there is no basis for the Court to conclude that Branden did not follow his normal practice in this case. *See Phillips v. United States*, No. 14-CV-5820 (NG), 2015 WL 4112483, at *4 (E.D.N.Y. July 7, 2015) (denying a *coram nobis* petition alleging that counsel provided incorrect immigration advice in part because defense counsel's representations were "far more credible" than the petitioner's).

Even assuming that counsel gave Davilmar erroneous advice, Petitioner's claim of ineffective assistance fails because he has not credibly established that he was prejudiced by that error. *See Strickland*, 466 U.S. at 687. Although Davilmar asserts that he would not have pled guilty had he known that conspiracy to commit bank fraud is an offense that can lead to deportation, he also represents that the "only reason" he pled guilty was because counsel

purportedly promised that he would not serve time in prison. Pet. ¶ 12.[7] Davilmar did, in fact, avoid incarceration thanks to the Cooperation Agreement that he now disavows; Judge Pauley emphasized during sentencing that there was "no question in [his] mind" that Davilmar would have been sentenced to a term of incarceration had he not cooperated. *See* Sentencing Tr. at 12:5-15.[8]

Davilmar states that he would have proceeded to trial or negotiated a more favorable deal had he known the immigration consequences of his conviction because he did not believe that the Government had "sufficient evidence" against him. Pet. ¶¶ 12, 20. Petitioner's conclusory assertions are far from sufficient to establish prejudice. *See United States v. Nunez*, No. 08-CR-709 (DLC), 2020 WL 2092452, at *3 (S.D.N.Y. Apr. 30, 2020) (denying *coram nobis* relief in part because the petitioner failed to "prove" that "a more favorable outcome was available"); *Calderon v. United States*, 953 F. Supp. 2d 379, 385 (E.D.N.Y. 2013) (denying *coram nobis* relief in part because the petitioner's "self-serving statements" that he would have proceeded to trial but for counsel's advice was insufficient to establish prejudice).[9] Petitioner's failure to articulate what his defense would have been is especially glaring given the evidence the Government proffered at the time of his plea. *See* Change-of-Plea Tr. at 9:1-14 (discussing the

---

[7]   Counsel credibly denies ever making such a promise. *See* Branden Decl. ¶ 7(a).

[8]   At the time Davilmar pled guilty, the Guidelines were binding on the sentencing judge. *See United States v. Booker*, 543 U.S. 220, 233 (2005). The applicable Guidelines range for Davilmar's conviction was 21 to 27 months' imprisonment. *See* Sentencing Tr. at 11:7-8.

[9]   Petitioner insists that his statements alone are sufficient to establish prejudice; the cases he cites in support of that position say no such thing. *See* Pet. ¶ 20 (citing *Kovacs*, 744 F.3d at 53 (granting *coram nobis* relief because the petitioner's "single-minded focus" on the immigration consequences of his plea was reflected in a hearing transcript and in counsel's declaration); *Doe v. United States*, 915 F.3d 905, 910–12 (2d Cir. 2019) (granting *coram nobis* relief because the Government had "credited" the petitioner's supporting declaration discussing prejudice)).

It is entirely plausible that Petitioner's attorney advised him that a guilty plea and cooperation would increase the possibility that he could avoid prison time for his criminal conduct. That is a far cry, however, from a promise of a non-jail sentence.

Government's access to testimony from victims, co-conspirators, and relevant banks, as well as the stolen checks at issue); *Thomas v. United States*, No. 19-CV-5675 (PAE), 2020 WL 3428148, at *5 (S.D.N.Y. June 23, 2020) (denying *coram nobis* relief based on alleged ineffective assistance leading up to a guilty plea in part because the petitioner did not assert a non-frivolous defense in response to the Government's "potent and varied" evidence).

In short, putting aside the fact that *coram nobis* relief would not be helpful to Petitioner given his state court conviction, he has failed to establish a Sixth Amendment claim for ineffective assistance of counsel.

## CONCLUSION

For the foregoing reasons, Davilmar's petition for a writ of error *coram nobis* is DENIED.

The Clerk of Court is respectfully directed to close the open motions at Docket Entries 59, 60, and 73. The Clerk is further directed to mail a copy of this Order to Petitioner and to note the mailing on the docket.

Dated: September 6, 2023
New York, New York

_____
VALERIE CAPRONI
United States District Judge